**Lloyd Bernstein, OSB #002030**
lloyd.bernstein@wilsonelser.com
**Sean Downing, OSB #245160**
sean.downing@wilsonelser.com
**Matthew Casey, OSB #981950**
matt.casey@wilsonelser.com
WILSON ELSER MOSKOWITZ
EDELMAN & DICKER LLP
805 SW Broadway, Suite 2460
Portland, Oregon 97205
Telephone: 971.352.3030
Facsimile: 971.352.3019

*Attorneys for Defendant*

UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

PORTLAND DIVISION

| | |
|---|---|
| RICHARD AND GABRIELLE HARRIS, | Case No. 3:22-cv-01346-SI |
| Plaintiffs, | **DEFENDANT'S TRIAL BRIEF** |
| v. | |
| SAFECO INSURANCE COMPANY OF ILLINOIS, | |
| Defendant. | |

Defendant Safeco Insurance Company of Illinois ("Safeco") hereby respectfully submits the following Trial Brief pursuant to the Court's Trial Management Order, Dkt. No. 98.

## I.    INTRODUCTION

This lawsuit concerns thirty-seven days in the summer of 2022, in which Plaintiffs Gabrielle and Richard Harris ("Plaintiffs") filed an insurance claim with Safeco and Safeco undertook a reasonable investigation into coverage. Plaintiffs allege that during

Page 1 – DEFENDANT'S TRIAL BRIEF

that time, Safeco breached its duty of care under ORS § 746.230 and seek $15,375,000 in compensatory damages as a result. While the plea is disproportionate and the alleged damages arise long after Plaintiffs filed their complaint, the substance of the present lawsuit is simply those thirty-seven days in August 2022.

In early August, after Safeco received notice of Plaintiffs' claim, it began the normal process of adjusting a claim, including communicating with mitigation companies and contacting vendors to obtain temporary housing. However, during a call between Mrs. Harris and her assigned adjuster, Mrs. Harris said she would not accept Safeco's offer to stay at a hotel because she had "livestock" she wished to look after. Safeco's adjuster, concerned the property was operating as a farm and not a home, referred the claim to Safeco's special investigative unit to investigate whether the property was a farm and if Plaintiffs had disclosed that when obtaining their original homeowners' policy with Safeco.

For the next twelve days, Safeco investigated those issues. During that time, because coverage was not confirmed, Safeco did not issue payments to Plaintiffs. This included payments for temporary housing. Plaintiffs contacted Safeco's adjusters to request housing despite knowledge of the ongoing investigation, as they were living with family and friends. On the twelfth day of Safeco's investigation, August 23, the investigator reached out to Mrs. Harris for an interview. However, by that time, Plaintiffs had retained counsel, and counsel's schedule dictated that the interview had to occur a week later. After the interview and based upon the information gathered as a result, Safeco was able to complete its investigation and accepted coverage. The same day, September 1, Safeco offered again to provide Plaintiffs with temporary housing. They were unsatisfied and sued Safeco for various claims in contract and tort.

The only issue before the Court now is whether Safeco, during those thirty-seven days, breached its duty under either ORS § 736.230(1)(a), (c), or (e), such that it is liable

**Wilson Elser Moskowitz Edelman & Dicker LLP**
805 SW Broadway, Suite 2460
Portland, Oregon 97205
Telephone: 971.352.3026 • Fax 971.352.3019

in tort to Plaintiffs. If so, the jury is to determine how much, if any, damages are owed to Plaintiffs.

## II.    UNDISPUTED STATEMENT OF FACT

On August 2, 2022, Plaintiffs' home suffered fire damage when one of their dogs turned on the kitchen stove. Soon after the fire began, Mrs. Harris came home and was able to put it out. While the fire was localized to the kitchen, Plaintiffs did not want to live at the property. At the time, Plaintiffs were insured by Safeco under a homeowner's insurance policy that contained an "Additional Living Expenses" ("ALE") provision. That provision states:

> If a loss covered under this section makes that part of the *residence premises* where you reside uninhabitable, we cover **Additional Living Expense**, meaning the necessary increase in living expenses you incur so that your household can maintain its normal standard of living.

On August 5, Safeco assigned claims adjustor Latoya Tate to Plaintiffs' claim. Also on that day, Mrs. Harris contacted Safeco, requesting emergency housing.

Soon after she was assigned to the claim, Tate called Mrs. Harris. During their call, Mrs. Harris told Tate that she wanted to *buy* a Fifth Wheel as temporary living accommodation and that Plaintiffs lived on a "farm" with "livestock." Tate noted her request in the file, including that they had "livestock," asked Safeco's housing vendor, Assured Relocation, for a cost estimate for renting a Fifth Wheel.

On August 11, Tate submitted Plaintiffs' claim to Safeco's special investigations unit ("SIU"). She did so to investigate whether Plaintiffs made a material misrepresentation in obtaining a homeowner's policy instead of a farm policy based on Mrs. Harris's statement they owned livestock. Tate also arranged to obtain a recorded statement from Plaintiffs and for a "fire report" regarding the cause of the fire.

Safeco hired Matthew Hirst, an independent adjustor, to inspect the property. Hirst inspected the property on August 11. That same day, Hirst concluded that the fire was

Page 3 – DEFENDANT'S TRIAL BRIEF

accidentally caused by one of Plaintiffs' dogs turning on the stove. He wrote the same to Tate three days later.

Before he made that note, Safeco assigned SIU investigator William Evans to Plaintiffs' claim. Accordingly, Safeco also sent a reservation of rights letter to Plaintiffs. The letter stated that the reasons for Safeco's reservation of rights "include, but are not limited to," both "[c]overage pending fire investigation" and "[r]ecorded Interview pending."

On August 15, Mrs. Harris requested reimbursement under the policy's ALE provision. Mrs. Harris further said that she would hire an attorney "the next day" if she did not receive Safeco's check by overnight delivery. Tate noted these comments in Safeco's claim file and provided them to the SIU.

On August 22, Mrs. Harris demanded an advance payment under her policy's ALE provision while Safeco's investigation was pending. Tate responded that the investigation into coverage was ongoing.

Within a week of being assigned the claim, Evans had taken several steps to investigate the coverage issues, including speaking with Tate and Hirst. Evans also contacted Safeco's underwriting group. He learned that if Plaintiffs had disclosed that they had fewer than five horses, 20 livestock, and 25 fowl on their property, Safeco would have likely issued them a similar policy but added an incidental farm rider with only a "nominal" premium increase.

On August 23, Evans called Mrs. Harris to schedule her recorded statement. During the call, Mrs. Harris disclosed that she was represented by an attorney. Evans told her that he would need to schedule the statement with her attorney present. Evans learned that Mrs. Harris's attorney was unavailable until September 1. He scheduled her recorded interview for that date.

/ / /

Page 4 – DEFENDANT'S TRIAL BRIEF

**Wilson Elser Moskowitz Edelman & Dicker LLP**
805 SW Broadway, Suite 2460
Portland, Oregon 97205
Telephone: 971.352.3026 • Fax 971.352.3019

The interview went forward on September 1. Based on this interview, Evans concluded that, given on the number of animals living on Plaintiffs' property, Plaintiffs' omission was not a material misrepresentation. Evans also concluded that the fire was caused by Plaintiffs' dog.

Plaintiffs' attorney wrote to Tate, that same day, demanding Safeco reimburse Plaintiffs for the *purchase* of a Fifth Wheel. Tate immediately responded that Safeco's investigation had concluded, and coverage was accepted, but that Safeco would not agree to the purchase of a Fifth Wheel trailer. Instead, Tate wrote that Safeco was willing to *lease* a Fifth Wheel. The next day, September 2, Safeco made its first payment to Plaintiffs.

On September 8, Plaintiffs filed this lawsuit. In their original complaint, Plaintiffs sought $550,000 in economic damages and $500,000 in noneconomic damages.

Two days after filing this lawsuit, Plaintiffs purchased a Fifth Wheel trailer for $119,095.46. By December 5, Safeco paid the entirety of the policy's ALE limit and issued more than $100,000 in payments for loss of contents. On April 6, the parties resolved Plaintiffs' contract claims for an additional payment of $220,000. Thus, by April 2023, Plaintiffs had been paid over $400,000 by Safeco.

Plaintiffs continued to assert claims for intentional infliction of emotional distress; negligence *per se*; and intentional interference with economic relations. On October 25, 2024, Plaintiffs filed their Second Amended Complaint, which is the operative Complaint in this action. In their Second Amended Complaint, Plaintiffs assert only one claim: negligence *per se*. For that claim, Plaintiffs now allege noneconomic damages of $50,000 for Mr. Harris and $15 million for Mrs. Harris, past economic damages of $75,000 for Mrs. Harris and future economic damages of $250,000 for Mrs. Harris.

/ / /

/ / /

Page 5 – DEFENDANT'S TRIAL BRIEF

### III.    LEGAL ISSUES FOR TRIAL

Oregon has settled on five elements that are required to establish a common-law negligence claim:

> (1) that defendant's conduct caused a foreseeable risk of harm, (2) that the risk is to an interest of a kind that the law protects against negligent invasion, (3) that defendant's conduct was unreasonable in light of the risk, (4) that the conduct was a cause of plaintiff's harm, and (5) that plaintiff was within the class of persons and plaintiff's injury was within the general type of potential incidents and injuries that made defendant's conduct negligent.

*Moody v. Or. Cmty Credit Union*, 371 Or. 772, 784 (2023) (quoting *Solberg v. Johnson*, 306 Or. 484, 490–91 (1988)). Under Oregon law, negligence per se is not "a separate type of negligence claim with its own elements." *Id.* at 781. Instead, it "'is a shorthand descriptor of a negligence claim in which the standard of care is expressed by a statute or rule.'" *Id.* at 782 (quoting *Deckard v. Bunch*, 358 Or. 754, 761 n. 6 (2016)). Thus, as the statute only provides the standard of care, Plaintiffs must still prove "requisite elements of a negligence claim." *Id.* at 783.

**A. Plaintiffs must meet their burden to show Safeco breached the standards of care provided by ORS 746.230(1)(a), (c), or (e).**

Plaintiffs carry the burden to prove Safeco breached the relevant standards set forth in ORS § 746.230(1). *Moody*, 371 Or. at 783. In accordance with the Court's Opinion and Order on Safeco's Second Motion for Summary Judgment, the relevant standards are set forth in subsections (a), (c), and (e). *See* Op. and Order, Dkt. No. 95; *see also* Def.'s Mot. in Limine No. 2.

/ / /

Page 6 – DEFENDANT'S TRIAL BRIEF

### 1. ORS 746.230(1)(a).

Subsection (a) requires that insurers not misrepresent facts or policy provisions in settling claims. ORS § 746.230(1)(a). The Court dismissed all but one theory of liability under subsection (a). Op. and Order at 14, Dkt. No. 95. That theory of liability is that Safeco's reservation or rights letter contained a "half-truth" regarding its coverage investigation, and therefore Safeco misrepresented a material fact to Plaintiffs.

To prove a defendant made a material misrepresentation, a plaintiff must show "the defendant made a material misrepresentation that was false; the defendant did so knowing that the representation was false; the defendant intended the plaintiff to rely on the misrepresentation; the plaintiff justifiably relied on the misrepresentation; and the plaintiff was damaged as a result of that reliance." *Strawn v. Farmers Ins. Co.*, 350 Or. 336, 351-52, 258 P.3d 1199, 1209 (2011).

As discussed in the Court's opinion, "one who makes a representation that is misleading because it is in the nature of a 'half-truth' assumes the obligation to make a full and fair disclosure of the whole truth." *Gregory v. Novak*, 121 Or. App. 651, 655, 855 P.2d 1142, 1144 (1993). "The extent to which a representation is misleading," is a question for the jury. *Id.* Plaintiffs will, therefore, need to prove to the jury that Safeco's reservation of rights letter was misleading, by the "active concealment or nondisclosure," of the reason for Safeco's investigation. *Neel v. Lee*, 316 Or. App. 159, 176, 504 P.3d 26, 36 (2021).

Next, they will need to prove Safeco *knew* that the reservation of rights letter was false or misleading. *Strawn*, 350 Or. at 351–52. This scienter requirement, "may be established by a showing that the defendant acted with a reckless disregard for the truth or falsity of the representation made." *Malensky v. Mobay Chem. Corp.*, 104 Or. App. 165, 171, 799 P.2d 683, 686 (1990). Plaintiffs are not calling Latoya Tate to testify at trial. Additionally, there is no evidence that either Mr. Evans or Ms. Cuevas—whose

Page 7 – DEFENDANT'S TRIAL BRIEF

**Wilson Elser Moskowitz Edelman & Dicker LLP**
805 SW Broadway, Suite 2460
Portland, Oregon 97205
Telephone: 971.352.3026 • Fax 971.352.3019

testimony the jury will hear—had any involvement in drafting the letter.

Plaintiffs must then show Safeco intended that Plaintiffs rely on the misrepresentation. Again, Plaintiffs have another scienter to prove: Safeco's intent that Plaintiffs rely on the reservation of rights letter.

Turning to the fourth element of the claim, a party must establish that their reliance on a misrepresentation was reasonable. *Masood v. Safeco Ins. Co.*, 275 Or. App. 315, 332, 365 P.3d 540, 551 (2015). "Whether reliance on an alleged misrepresentation is justifiable turns on 'the totality of the parties' circumstances and conduct.'" *Vukanovich v. Kine*, 268 Or. App. 623, 634-35, 342 P.3d 1075, 1083 (2015). Additionally, the party claiming reliance must have taken "reasonable precautions to safeguard [their] own interests." *Gregory*, 121 Or. App. at 655. Whether the precautions were reasonable "turns on the nature of the person's relationship with the person making the alleged misrepresentation, and that person's experience and sophistication with the type of transaction at issue, as well as with the subject matter of the misrepresentation." *Vukanovich*, 268 Or. App. at 635.

Finally, Plaintiffs must show they were damaged as a result of Safeco's alleged misrepresentation. Safeco's reservation of rights letter must therefore be both the actual cause and legal cause Plaintiffs' emotional distress and optic neuritis. *Knepper v. Brown*, 345 Or. 320, 329–30 (2008) (holding the final element of common law misrepresentation claim includes "some notion of proximate cause"). Neither of Plaintiffs' medical experts show in their reports that they reviewed the reservation of rights letter nor do either mention the letter in their reports. To the extent Plaintiffs believe the alleged misrepresentation in the letter delayed the claim, which in turn was the cause of Plaintiffs' alleged injuries, Plaintiffs will need to show that Safeco's investigation would have ended earlier but for the letter and that Plaintiffs would not have experienced distress.

**Wilson Elser Moskowitz Edelman & Dicker LLP**
805 SW Broadway, Suite 2460
Portland, Oregon 97205
Telephone: 971.352.3026 • Fax 971.352.3019

Plaintiffs' claim handling experts have not issued conclusions relevant to this theory of liability. Mr. Deitz does not conclude in his expert report that Safeco misrepresented the facts or policy. For his part, Mr. Moreland does conclude in his report that Safeco violated subsection (a). However, the sole reason he gives for reaching his conclusion is that Safeco misrepresented the scope of the Policy's ALE coverage. That theory was dismissed on summary judgment. Therefore, neither expert may testify that Safeco breached subsection (a) under the sole remaining available theory of liability. *See* Def.'s Mot. in Lim. No. 18.

### 2. ORS 746.230(1)(c).

Subsection (c) provides that insurers must adopt "reasonable standards for the prompt investigation of claims." ORS § 746.230(1)(c). To provide guidance to insurers operating in the state, the Oregon Administrative Rules set forth standards that help define their obligations under ORS § 746.230. OAR 836-080-0205(2). Courts have also utilized these standards to help assess whether an insurer was negligent in carrying out those obligations. *See Butters v. Travelers Home & Marine Ins. Co*., No. 3:22-cv-00726-SB, 2024 U.S. Dist. LEXIS 116150, at *59 (D. Or. Apr. 22, 2024), adopted sub nom. *Butters v. Travelers Indem. Co*., No. 3:22-CV-726-SB, 2024 U.S. Dist. LEXIS 151534 (D. Or. Aug. 23, 2024). The relevant Oregon Administrative Rules provide that an insurer shall complete the investigation "not later than the 45th day after" notice of the claim. OAR 836-080-0230.

Here, Safeco's coverage investigation took thirty days to complete. Plaintiffs believe that because the claim was under SIU investigation for twenty-one of those days, Safeco violated subsection (c). However, Plaintiffs' claim handling expert, Paul Moreland, testified during his deposition that it would be reasonable for Safeco to investigate whether Plaintiffs should have had a different policy and that Safeco acted reasonably by referring the claim to SIU to investigate whether Plaintiffs made a material

Page 9 – DEFENDANT'S TRIAL BRIEF

**Wilson Elser Moskowitz Edelman & Dicker LLP**
805 SW Broadway, Suite 2460
Portland, Oregon 97205
Telephone: 971.352.3026 • Fax 971.352.3019

misrepresentation. It is undisputedly reasonable that SIU investigated the claim.

The SIU investigation lasted from August 11 to September 1, twenty-one days, precipitated by call on August 8 when Mrs. Harris disclosed that Plaintiffs had livestock. Tate made a note in the claim notes that the Policy was not a farm policy and made a referral to underwriting. That same day, she assigned Assured Relocation to look for temporary housing for Plaintiffs. Three days later, Tate referred the claim to SIU. Based on her call with Mrs. Harris, she asked SIU to investigate whether there had been a material misrepresentation when Plaintiffs obtained the Policy. As Mrs. Cuevas testified, Tate did not have the authority on her own to make such a determination.

After Tate referred the claim to SIU, Safeco's independent adjuster wrote in the claim notes that he had completed his inspection and confirmed Plaintiffs' dog started the fire. Tate reviewed the inspection notes, including the note about the dog, on August 16. Tate forwarded the adjuster's findings to Evans the same day.

As for the length of the investigation, as discussed above, Tate referred the claim to SIU on August 11. Evans investigated the claim until he called Mrs. Harris on August 22 at which point he asked to schedule a recorded statement. During his conversation with Mrs. Harris, *Evans* learned Plaintiffs were represented by counsel. Evans, therefore, had to work through counsel. The next day, Mr. Bonaparte, Plaintiffs' counsel, spoke with Evans. The earliest day Mr. Boneparte could schedule the recorded statement was September 1. The call went forward as scheduled, and based upon its contents, Safeco affirmed coverage later that day. The SIU investigation could have ended on August 23. However, due to Mr. Bonaparte, Safeco could not conduct the recorded statement until September 1.

Plaintiffs believe that Safeco did not adopt reasonable standards for its investigation. However, OAR 836-080-0230 provides insurers with forty-five days to investigate coverage. Safeco complied with the relevant regulations on the promptness of

Page 10 – DEFENDANT'S TRIAL BRIEF

claim investigations by completing its coverage investigation in thirty days. Additionally, even Plaintiffs' own expert testified that Safeco was reasonable to investigate the issue and to refer the claim to SIU. Thus, by making such a referral, and completing the investigation within forty-five days, Safeco also complied with standard industry customs and Oregon law.

### 3. ORS 746.230(1)(e).

Subsection (e) provides that insurers must "affirm or deny coverage of claims within a reasonable time after a completed proof of loss statement has been submitted." ORS § 746.230(1)(e). Safeco never denied coverage. *See* Def.'s Mot. in Limine No. 10. Rather Safeco reasonably reviewed and affirmed coverage on September 1, 2022. The Loss occurred on August 2, 2022. Thus, the sole issue for the jury is whether thirty-days was a reasonable time to affirm coverage, given the context of the SIU investigation, the reasonableness which is undisputed as discussed above.

As relevant to subsection (e), the Oregon Administrative Rules state that an insurer has thirty days "after its receipt of properly executed proofs of loss" to "advise the claimant of the acceptance or denial of the claim." OAR 836-080-0235(1). Safeco affirmed coverage within thirty days of the Loss. Therefore, it complied with the standards defined under the Oregon Administrative Rules.

Plaintiffs will rely on the testimony from their lay witnesses. Neither Mr. Moreland nor Mr. Dietz concluded that Safeco breached subsection (e). Therefore, they cannot opine on the issue at trial. *See* Def.'s Mot. in Lim. No. 18. Given that Plaintiffs have no expert to testify that the requisite standard of care is anything other than that laid out is OAR 836-080-0235(1), Plaintiffs cannot meet their burden of proof with respect to a breach of ORS § 746.230(1)(e).

### B. Plaintiffs must meet their burden to show Safeco caused Plaintiffs' physical injuries, medical costs, and emotional distress.

**Wilson Elser Moskowitz Edelman & Dicker LLP**
805 SW Broadway, Suite 2460
Portland, Oregon 97205
Telephone: 971.352.3026 • Fax 971.352.3019

If Plaintiffs are able to prove by the preponderance of evidence that Safeco breached either ORS § 746.230(1)(a), (c), or (e), they will need to prove the remaining elements of a common law negligence claim. *Moody*, 371 Or. at 782–83.

### 1. Plaintiffs must show that Safeco's actions caused Mrs. Harris's physical injuries with reasonable medical probability.

Plaintiffs have alleged that Safeco caused Mrs. Harris's optic neuritis and her Post-Traumatic Stress Disorder, among other symptoms. As these diagnoses are beyond the ability of lay witnesses to determine, Plaintiffs must establish causation to a reasonable degree of medical probability to meet their burden of proof at trial. *Joshi v. Providence Health System of Oregon*, 342 Or. 152, 159 (2006). This is a higher standard than the mere possibility that Safeco's claim handling caused Mrs. Harris's diagnoses. *Cleland v. Wilcox*, 273 Or. 883, 887 (1975) ("[A] mere possibility that the alleged negligence of the defendant was the cause of plaintiff's injuries is not sufficient."). Thus, Plaintiffs must prove with reasonable medical probability that Plaintiffs' bodily injuries were caused by Safeco's alleged breach of ORS § 746.230(a), (c), or (e).

In his report, Dr. Strominger does not conclude that the disease Mrs. Harris was diagnosed with, optic neuritis, was caused by stress. Instead, Dr. Strominger concludes that stress is *associated* with increased exacerbations in *multiple sclerosis*. Mrs. Harris has not been diagnosed with multiple sclerosis. This does not show Safeco's alleged breach of ORS § 746.230 caused Mrs. Harris's optic neuritis under the requisite standard.

Regarding Mrs. Harris's PTSD diagnosis, Ms. Cagle states that Mrs. Harris meets the diagnostic criteria as defined by the DSM 5. However, the DSM 5 requires that an individual was exposed to death, threatened death, actual or threatened serious injury, or actual or threatened sexual violence. Nowhere in Ms. Cagle's report does she state that Mrs. Harris was exposed to such threats. Additionally, throughout her report, Ms. Cagle conflates several causes of stress into one and then concludes that these causes, together,

Page 12 – DEFENDANT'S TRIAL BRIEF

**Wilson Elser Moskowitz Edelman & Dicker LLP**
805 SW Broadway, Suite 2460
Portland, Oregon 97205
Telephone: 971.352.3026 • Fax 971.352.3019

led to Mrs. Harris's PTSD. These stresses include the fire, Safeco's claim handling, and the lawsuit. Ms. Cagle makes no attempt to differentiate these various causes when discussing whether they contributed to her diagnosis. The jury will be best to speculate which causes she is referring to in order to untangle Ms. Cagle's conflated reasoning. *See* Def.'s Mot. in Lim. No. 23.

## 2. *Plaintiffs must show that but for Safeco's actions, Plaintiffs would not have experienced such emotional distress.*

In most negligence cases, Oregon uses a "but-for" standard of causation. *Haas v. Estate of Carter*, 370 Or. 742, 757–58, 525 P.3d 451, 461 (2023). With a "but-for" instruction, "[t]he question for a jury is whether the injury that in fact occurred would have occurred when and as it did without the defendant's tortious conduct." *Haas*, 370 Or. at 760. This standard would apply to determine the causation of Plaintiffs' emotional distress that does not require expert testimony to establish. *Baughman v. Pina*, 200 Or. App. 15, 18, 113 P.3d 459, 460 (2005) ("When the element of causation involves a complex medical question, as a matter of law, no rational juror can find that a plaintiff has established causation unless the plaintiff has presented expert testimony that there is a reasonable medical probability that the alleged negligence caused the plaintiff's injuries."); *see also Hobus v. Howmedica Osteonics Corp.*, No. 23-3528, 2025 U.S. App. LEXIS 96, at *3 (9th Cir. Jan. 3, 2025). Plaintiffs must also show objective indicators of *serious* emotional injury. *Philibert v. Kluser*, 360 Or. 698, 715, 385 P.3d 1038, 1048 (2016). This would not include annoyance or injured feelings experienced in day-to-day life. *Id.* at 713 (quoting *Hall v. May Dep't Stores Co.*, 292 Or. 131, 135, 637 P.2d 126, 129 (1981)).

Plaintiffs will need to explain to the jury how Plaintiffs' emotional distress increased dramatically two years after the Loss, more than year and half after ALE was paid in full, and only after their property was repaired. As Ms. Cagle notes in her report,

Page 13 – DEFENDANT'S TRIAL BRIEF

**Wilson Elser Moskowitz Edelman & Dicker LLP**
805 SW Broadway, Suite 2460
Portland, Oregon 97205
Telephone: 971.352.3026 • Fax 971.352.3019

but fails to address entirely, Mrs. Harris's anxiety and depression scores increased dramatically from the month following the Loss to their interview in 2024, a period of two years. Ms. Cagle makes no attempt to explain why this increase in distress, other than Mrs. Harris was experiencing stress from her lawsuit, a non-compensable cause. *See infra*. Finally, there are several other potential causes of stress in Plaintiffs' lives—of which she did not make Ms. Cagle aware. After persuading a jury that Safeco violated subsection (a), (c), or (e), they will have to further convince them that Mrs. Harris's various aliments were due to that violation rather than her myriad of comorbidities.

Both Dr. Strominger and Ms. Cagle discuss the stress the fire caused. However, Safeco did not cause the fire, and as such, is not liable for damages arising from that stress. Within two days of filing this lawsuit, Plaintiffs had purchased a new Fifth Wheel and began living in it shortly after. Safeco had already offered to rent one for them, and it issued the entire ALE limits shortly after. Only *after* Plaintiffs were living in their preferred temporary housing did Mrs. Harris report any physical symptoms that she now blames Safeco for. However, the distress of living in temporary housing is not compensable, as Safeco did not cause the fire. Plaintiffs' inability to parse the causation of the two events—the fire and the claim handling—will prevent them from carrying their burden at trial to show but for Safeco's actions, Plaintiffs would not have experienced the stress they did.

### 3. *Plaintiffs cannot recover damages for emotional distress principally brought about by their own lawsuit.*

Plaintiffs are not entitled to emotional distress damages that arise principally from the stress of bringing and prosecuting a lawsuit. *Sch. Dist. No. 1, Multnomah Cnty. v. Nilsen*, 271 Or. 461, 485–86 (1975); *compare* Op. and Order at 11, Dkt. No. 77; *with* Op. and Order at 22–23, Dkt. No. 95. Despite how Plaintiffs try to read *Moody* to bring their claim within a new realm of tort liability, Oregon law is clear that they cannot recover for

**Wilson Elser Moskowitz Edelman & Dicker LLP**
805 SW Broadway, Suite 2460
Portland, Oregon 97205
Telephone: 971.352.3026 • Fax 971.352.3019

emotional distress arising from their own litigation. The Court affirmed as much in its April 2025 Opinion and Order, Dkt. No. 77.

Mrs. Harris has found her Lawsuit against Safeco to be stressful and has testified that her anxiety is triggered by the legal process. All her emergency room visits and therapy sessions occurred after Plaintiffs initiated this lawsuit on September 9, 2022, and after Safeco exhausted their policy's ALE coverage limits. This included her diagnosis of optic neuritis, which came only a year after she had resolved her contract claims with Safeco, and had been paid for repairs and housing. Mrs. Harris's stress only increased over time. This is despite Plaintiffs' claim that their emotional distress arises from Safeco's alleged failure to promptly issue ALE payments. As Safeco's expert will testify, this is not how serious emotional distress manifests, and there are other later causes that better explain any alleged distress that occurred *years* after the resolution of Plaintiffs' claim. This includes the death of Plaintiffs' close family members, other lawsuits Plaintiffs have initiated, and the stress from their present lawsuit against Safeco. Looking at the history of this lawsuit and Plaintiffs' medical records, it is clear that Mrs. Harris's stress often coincided with developments in her lawsuit:

### *Table Summary of Lawsuit Events and Medical Episodes*

| Date | Event |
|---|---|
| August 2, 2022 | Fire starts in Plaintiffs' property. |
| September 1, 2022 | Safeco concludes its coverage investigation. |
| September 2, 2022 | Safeco issues first payment for the dwelling. |
| September 8, 2022 | **Lawsuit:** Plaintiffs initiate lawsuit against Safeco. |
| September 10, 2022 | Plaintiffs purchase a Keystone Fuzion Fifth Wheel for temporary housing. |
| September 16, 2022 | **Medical:** Mrs. Harris has telehealth appointment with Dr. Shah; diagnosed with adjustment disorder. |

Page 15 – DEFENDANT'S TRIAL BRIEF

**Wilson Elser Moskowitz Edelman & Dicker LLP**
805 SW Broadway, Suite 2460
Portland, Oregon 97205
Telephone: 971.352.3026 • Fax 971.352.3019

| November 8, 2022 | Safeco issues $29,206.98 in ALE coverage. |
|---|---|
| November 9, 2022 | Safeco issues $20,420 advance payment for damaged contents. |
| December 5, 2022 | Safeco pays remaining ALE limits under the Policy. |
| December 16, 2022 | Safeco issues $21,056 for contents. |
| January 14, 2023 | Safeco issues $30,794 for dwelling repairs. |
| January 25, 2023 | **Lawsuit:** Plaintiffs propose mediation to Safeco. |
| January 27, 2023 | **Medical:** Mrs. Harris's first emergency room visit since the loss; seen for sleep disturbances, panic attacks, hair loss, headaches, and "chronic illness." |
| February 2023 | Safeco issues $21,322 for contents. |
| February 8, 2023 | **Medical:** Mrs. Harris goes to emergency room for increasing heart palpitations. |
| April 6, 2023 | **Lawsuit:** Mediation occurs – Contract claims resolved. |
| April 12, 2023 | **Medical:** Mrs. Harris goes to emergency room for burning epigastric pain. |
| November 27, 2023 | **Lawsuit:** Safeco's counsel first requests Plaintiffs' availability for depositions. |
| December 28, 2023 | **Medical:** Mrs. Harris visits ABC Vision clinic; diagnosed with optic neuritis. |
| December 31, 2023 | **Medical:** Mrs. Harris goes to emergency room for chest pain, shortness of breath, worsening headache, and vision changes. |
| January 18, 2024 | **Medical:** Mrs. Harris goes to emergency room for vision changes. |
| February 5, 2024 | **Lawsuit:** Safeco's counsel again requests Plaintiffs' availability for depositions. |
| February 23, 2024 | Mrs. Harris's deposition rescheduled due to her hospital visits and has been "strongly advised to avoid stressors." |
| May 15, 2024 | **Lawsuit:** First deposition of Mrs. Harris; she testifies she was hospitalized because she was "so stressed-out about having to deal with this again." |

Page 16 – DEFENDANT'S TRIAL BRIEF

**Wilson Elser Moskowitz Edelman & Dicker LLP**
805 SW Broadway, Suite 2460
Portland, Oregon 97205
Telephone: 971.352.3026 • Fax 971.352.3019

| August 9, 2024 | **Lawsuit:** Second deposition of Mrs. Harris; she testifies she "almost had to go in [to OHSU] last night" due to the deposition. |
| September 2024 | Plaintiffs hire Sara Cagle, LCSW; she confirms depositions "were quite stressful" and Mrs. Harris's triggers are "things related to the case." |
| October 25, 2024 | Plaintiffs file Second Amended Complaint. |
| November 20, 2024 | **Lawsuit:** Safeco provides notice of subpoena to third-party pageant organization. |
| November 25, 2024 | **Medical:** Mrs. Harris reports to Ms. Cagle feeling "violated" due to subpoena; Ms. Cagle notes increasing obsessive thoughts and fears about upcoming deposition. |
| December 11, 2024 | **Lawsuit:** Third deposition of Mrs. Harris. |
| December 13, 2024 | **Lawsuit:** Mrs. Harris sits for Independent Medical Exam; stomach reportedly in knots after the IME. |
| December 17, 2024 | **Medical:** Mrs. Harris goes to emergency room for abdominal pain. |

The undisputed evidence demonstrates a clear correlation between increased activity in the Plaintiffs' lawsuit and Mrs. Harris's distress, confirming that the source of her distress is the lawsuit itself, not the underlying insurance claim. This Cout has already ruled such distress is not recoverable in this case.

## IV.    CONCLUSION

Plaintiffs must show that within thirty-seven days between August and September of 2022, Safeco breached either ORS § 746.230(1)(a), (c), or (e). If they are successful on any of those three prongs, they must then prove the breach of the specific subsection caused Plaintiffs' injuries. Medical causation must be established by expert testimony and to a reasonable degree of medical probability, and causation must be established by showing that but for Safeco's breach of the relevant subsection, Plaintiffs would not have

Page 17 – DEFENDANT'S TRIAL BRIEF

**Wilson Elser Moskowitz Edelman & Dicker LLP**
805 SW Broadway, Suite 2460
Portland, Oregon 97205
Telephone: 971.352.3026 • Fax 971.352.3019

damages. Further, Plaintiffs must also prove the extent of their injuries. However, Plaintiffs may not recover for emotional injuries that arise from their own lawsuit or the event itself.

DATED June 8, 2026.

WILSON ELSER MOSKOWITZ EDELMAN & DICKER LLP

By: s/ Lloyd Bernstein
Lloyd Bernstein, OSB #002030
lloyd.bernstein@wilsonelser.com
Matthew Casey, OSB #981950
matt.casey@wilsonelser.com
Sean Downing, OSB #245160
sean.downing@wilsonelser.com

*Attorneys for Defendant*

Page 18 – DEFENDANT'S TRIAL BRIEF

**Wilson Elser Moskowitz Edelman & Dicker LLP**
805 SW Broadway, Suite 2460
Portland, Oregon 97205
Telephone: 971.352.3026 • Fax 971.352.3019